IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CHALANI LUKE, a minor, by and through )
her father and legal guardian, Reginald Luke, )
Jr., as surviving daughter of Chelsea Stanford, )
Deceased, and QUINDERIAUS MEYERS, )
as Personal Representative of the Estate of )
Chelsea Stanford, Deceased, )
             )
        Plaintiffs, )
             )
      v. )          CV 124-066
             )
WILLIAM E. LAVIGNE, M.D., and )
WILLIAM E. LAVIGNE, M.D., P.C., )
             )
        Defendants. )

_____

**O R D E R**

_____

Before the Court is Defendants' Motion to Strike Plaintiffs' Rebuttal Experts. (Doc. no. 47.) This action arises out of Chelsea Stanford's tragic death on April 12, 2022, due to pregnancy complications in her second trimester. On April 6, 2022, Ms. Stanford was admitted to Piedmont Augusta Hospital. Due in part to concerning drops in hemoglobin and potassium levels, Dr. Lavigne recommended Ms. Stanford remain in the hospital. Ms. Stanford rejected this recommendation and was discharged on April 7, 2022. On April 11, 2022, Ms. Stanford was admitted on an emergency basis to Doctors Hospital of Augusta (hereinafter "Doctors Hospital") and died the next day.

Drs. Kurosh Takhtehchian and Cidney Hulett are the rebuttal witnesses whose opinions Defendants move to strike. Defendants summarize the rebuttal testimony as covering

1

the following three topics: "(i) whether Dr. Lavigne breached the standard of care; (ii) what medically caused Ms. Stanford's death; and (iii) whether negligence by [Doctors Hospital] was the proximate cause of Ms. Stanford's death." (Doc. no. 47, p. 2.) Concerning the first topic, Plaintiffs agree in their response brief to withdraw rebuttal opinions concerning Ms. Stanford's "medical condition on April 6-7, 2022 and the care and treatment provided to Ms. Stanford by [Dr. Lavigne]." (Doc. no. 49, p. 1.) Plaintiffs' challenges to this first category are thus moot.

Concerning the third category, Plaintiffs' initial expert witnesses criticize Dr. Lavigne for failing to develop a differential diagnosis, which would have included consideration of life-threatening conditions including HELLP syndrome and fatty liver, and failing to proactively treat the diagnosed condition. (Doc. nos. 48-1, 48-2, 48-3, 48-4.) They opine these failures by Dr. Lavigne directly led to Ms. Stanford's death. (See id.) The defense experts, in turn, cast blame on Doctors Hospital and opine that better emergency care would likely have saved Ms. Stanford's life. (See doc. nos. 48-12, 48-13, 48-14, 48-15, 48-16.) In response, Plaintiffs identified Drs. Takhtehcian and Hulett, who opine that the failure by Dr. Lavigne to diagnose and treat Ms. Stanford caused her to be near the point of death by the time of her admission to Doctors Hospital, and Doctors Hospital did not commit malpractice when dealing with this emergency. (See doc. nos. 48-9, 48-10.) Considering the timing and progression of these expert opinions, the Court finds Plaintiffs introduced the opinions within the third category to contradict or rebut the defense theory of Doctors Hospital being the intervening cause of Ms. Stanford's death, as allowed by Fed. R. Civ. Pro. 26(a)(2)(D)(ii).

Concerning the second category, Defendants contend that proving HELLP syndrome as the cause of Ms. Stanford's death is an element of Plaintiffs' prima facie case that should have been covered by Plaintiffs' initial experts. (Doc. no. 47, p. 2; doc. no. 53, pp. 4-17.)

Plaintiffs' initial experts discuss HELLP syndrome as a potential cause of Ms. Stanford's death when explaining why it was critically important for Dr. Lavigne to conduct a differential diagnosis and consider at least three potentially deadly causes of Ms. Stanford's drop in hemoglobin and other blood levels.  (See doc. nos. 48-1, 48-2, 48-3, 48-4.)  But only rebuttal expert Dr. Hulett states directly in her report that, "to a reasonable degree of medical probability . . . her cause of death indeed was HELLP syndrome and acute fatty liver of pregnancy." (Doc. no. 48-10, p. 1.)  Plaintiffs provide the following explanation:

> Plaintiffs' case in chief in no way hinges on pinpointing the exact underlying disease Ms. Stanford was suffering from.  Rather, it hinges on the fact that—whichever underlying condition Ms. Stanford was suffering from—her condition would not have continued to deteriorate had Dr. Lavigne adhered to the standard of care on April 6-7, 2022.  More importantly, the rebuttal experts cannot explain their opinions that Ms. Stanford was too far gone to be saved by the time of her admission to Doctors Hospital without providing a detailed description of HELLP syndrome and its rapidly evolving nature.  The exact underlying condition only necessitates discussion because Defendants have decided to inject a blame-shifting tactic . . . that requires an analysis of whether Ms. Stanford's death could have been avoided by the providers at [Doctors Hospital], which in turn requires an analysis of what the exact underlying condition was.

(Doc. no. 49, p. 12.)

This passage sufficiently explains why Plaintiffs waited until rebuttal to identify HELLP syndrome and fatty liver as the medical conditions that caused Ms. Stanford's death. The Court finds Plaintiffs introduced this opinion to contradict or rebut the defense theory of Doctors Hospital being the intervening cause of Ms. Stanford's death, as allowed by Fed. R. Civ. Pro. 26(a)(2)(D)(ii).  Notably, identification of these medical conditions as the cause of death should have been no surprise to the defense in light of the lengthy discussion of these same conditions by Plaintiffs' initial experts.  However, out of an abundance of caution and to cure any prejudice claimed by the defense, the Court will extend the discovery period a final

time to the extent, if any, Defendants need to depose Drs. Takhtehcian and Hulett, identify rebuttal experts of their own, or conduct other discovery concerning any of the rebuttal opinions.  If the defense believes additional discovery is necessary, it shall confer with Plaintiffs' counsel and submit a proposed revised scheduling order to the Court by no later than Tuesday, January 20, 2026.

For these reasons, the Court **DENIES** Defendants' Motion to Strike Plaintiffs' Rebuttal Experts.  (Doc. no. 47).

SO ORDERED this 13th day of January, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA